IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| MALIKA DANIELS ACOFF, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO.: 2:13cv40-WC |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

# MEMORANDUM OPINION

## I.    INTRODUCTION

Plaintiff, Malika Daniels Acoff, applied for supplemental security income ("SSI"), but her application was denied at the initial administrative level. Plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ"). Following the hearing, the ALJ issued a decision in which he found Plaintiff not disabled at any time through the date of the decision. Plaintiff appealed that decision to the Appeals Council and filed a second application for benefits. The second application was granted. The Appeals Counsel vacated the ALJ's decision on the first application, reopened Plaintiff's second application, consolidated the cases, and remanded the cases to the ALJ. The ALJ rendered an unfavorable decision on the consolidated cases and the Appeals Counsel rejected Plaintiff's request for review of the ALJ's decision. The ALJ's decision consequently became the final decision of the Commissioner of Social Security

("Commissioner").[1]  *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  The case is now before the court for review under 42 U.S.C. § 405(g).  Pursuant to 28 U.S.C. § 636(c), both parties have consented to the conduct of all proceedings and entry of a final judgment by the undersigned United States Magistrate Judge.  Pl.'s Consent to Jurisdiction (Doc. 8); Def.'s Consent to Jurisdiction (Doc. 9).  Based on the court's review of the record and the briefs of the parties, the court REMANDS the decision of the Commissioner.

## II.   STANDARD OF REVIEW

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).[2]

To make this determination, the Commissioner employs a five-step, sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2011).

(1) Is the person presently unemployed?
(2) Is the person's impairment severe?

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub. L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1? [the Listing of Impairments]
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The burden of proof rests on a claimant through Step 4. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004). A claimant establishes a *prima facie* case of qualifying disability once they have carried the burden of proof from Step 1 through Step 4. At Step 5, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id*.

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity (RFC). *Id*. at 1238-39. RFC is what the claimant is still able to do despite his impairments and is based on all relevant medical and other evidence. *Id*. It also can contain both exertional and nonexertional limitations. *Id*. at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform. *Id*. at 1239. To do this, the ALJ can either use the Medical

---

[3] *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986), is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits. Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See, e.g.*, *Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981).

Vocational Guidelines[4] (grids) or call a vocational expert (VE). *Id*. at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available to an individual. *Phillips*, 357 F.3d at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id*.

The court's review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) ("Even if the evidence preponderates against the Commissioner's findings, [a reviewing court] must affirm if the decision reached is supported by substantial evidence."). A reviewing court may not look only to those parts of the record which support the decision of the ALJ, but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings. . . . No

---

[4] *See* 20 C.F.R. pt. 404 subpt. P, app. 2.

> similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III.   ADMINISTRATIVE PROCEEDINGS

Plaintiff was nineteen years old on the date her initial application was filed and had completed the 8th grade. Tr. 45. Plaintiff did not have past relevant work experience. *Id*. Following the administrative hearing, and employing the five-step process, the ALJ found Plaintiff "has not engaged in substantial gainful activity since [ . . . ] the application date." (Step 1) Tr. 30. At Step 2, the ALJ found that Plaintiff suffers from the following severe impairments: "psychotic disorder NOS, borderline intellectual functioning, and depressive disorder NOS." *Id*. The ALJ then found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments." (Step 3) Tr. 28. Next, the ALJ found that Plaintiff has the RFC to perform the full range of work at all exertional levels within the following nonexertional parameters: mild impairment of the ability to make judgments on simple work-related decisions; moderate impairment of the ability to carry out complex instructions; marked impairment of the ability to make judgments on complex work-related decisions; moderate impairment of the ability to interact appropriately with others; and moderate impairment of the ability to respond appropriately to changes in a routine work setting. Tr. 43. Because Plaintiff had no past relevant work, the ALJ

5

proceeded to Step 5, where he found that, "[c]onsidering the claimant's age, education, work experience, and residual functional capacity," and after consulting with the VE, "there are jobs that exist in significant numbers in the national economy that the claimant can perform." *Id*. The ALJ identified the following occupations as examples: "driver helper," "dietary aide," "office helper," and "laundry sorter." Tr. 46. Accordingly, the ALJ determined that Plaintiff "has not been under a disability, as defined in the Social Security Act," since the date the application was filed. Tr. 46.

## IV.    PLAINTIFF'S CLAIMS

Plaintiff presents four issues for this court's consideration in review of the ALJ's decision: (1) whether "[t]he Commissioner's decision should be reversed, because the ALJ erred in determining that Ms. Acoff suffers from borderline intellectual functioning rather than mental retardation"; (2) whether "[t]he Commissioner's decision should be reversed, because the ALJ's inaccuracies and mischaracterizations taint the record and do not rise to substantial evidence"; (3) whether "[t]he Commissioner's decision should be reversed, because Ms. Acoff respectfully requests that this Honorable Court reject the conclusory opinions provided by the non-examining expert"; and (4) whether "[t]he Commissioner's decision should be reversed, because the ALJ failed to properly reject the medical opinions expressed by Ms. Acoff's treating specialist." Pl.'s Br. (Doc. 11) at 4. Because the court finds that remand is necessary as to the first issue, as it is unable to review the ALJ's determination, the court will decline to review the other issues raised.

## V. DISCUSSION

There are two determinations at stake here, and they are separate and distinct. First, the ALJ determined that Plaintiff was not mentally retarded, despite having IQ scores of 54 and 61 and the opinions of three physicians, but instead, suffered from borderline intellectual functioning. That finding was made at Step 2, where the ALJ determined from what severe impairments Plaintiff suffers. Second, at Step 3, the ALJ determined that Plaintiff does not suffer an impairment that meets or equals one of the listings. Plaintiff challenges the ALJ's determination that she does not suffer the severe impairment of mental retardation and that she did not meet the requirements of Listing 12.05.

While the court has concerns regarding the ALJ's findings as to mental retardation, the court has been unable to review the ALJ's determination as to Listing 12.05. Listing 12.05, titled "intellectual disability":

> refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> A. Mental incapacity evidenced by dependence upon others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded;
>
> OR

7

B. A valid verbal, performance, or full scale IQ of 59 or less;

OR

C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;

OR

D. A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:

    1. Marked restriction of activities of daily living; or
    2. Marked difficulties in maintaining social functioning; or
    3. Marked difficulties in maintaining concentration, persistence, or pace;
or
    4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05

Plaintiff argues that while the ALJ's analysis of Listing 12.05 "is not lacking in words, it is lacking in actual rationale in [the ALJ] which provides an accurate and logical brid[g]e as to why the evidentiary record fails to support the finding that the combination of Ms. Acoff's impairments do not meet or medically equal Listing 12.05." Pl.'s Br. (Doc. 11) at 9. Plaintiff makes this argument because the ALJ's decision does not include a specific discussion of the factors set forth under the listing. Instead, the ALJ reiterates his basis for the Step 2 finding that Plaintiff suffered from borderline intellectual functioning. Indeed, the Commissioner even argues that "because the ALJ reasonably concluded Plaintiff had borderline intellectual functioning, rather than mental retardation because Plaintiff did not exhibit the requisite deficits in adaptive functioning,

further discussion of Paragraph C of Listing 12.05 was unnecessary." Def.'s Br. (Doc. 14) at 11.

The problem for the Commissioner, is that the determination of Mental Retardation is not the same as the determination under Listing 12.05.  One of those determinations is a medical diagnosis appropriate for the Step 2 determination, while the second relates to impairments for purposes of determining disability.  The ALJ's discussion in this section does not address the criteria of the Listing and forces this court to attempt to guess as to why Plaintiff did not meet the listing.  If the Commissioner is suggesting that the ALJ simply rejected Plaintiff's IQ scores, that is not clear from the record.  This is troubling because it is "critical that an ALJ specifically address and resolve the validity of an I.Q. score; if the I.Q. score is valid and meets or equals the criteria of a listed impairment, the ALJ can go no further." *Thomas v. Barnhart*, 2004 WL 3366150, *2 (11th Cir. 2004).  If the Commissioner is arguing that Plaintiff could not meet the adaptive functioning requirements of the introductory paragraph of the Listing, this too is troubling.  The introductory paragraph of the Listing simply requires deficits in adaptive functioning, not the "significant limitations" in adaptive functioning as required for a finding mental retardation.  To argue that Plaintiff does not have deficits in adaptive functioning would be contrary to the evidence of record and, indeed, the ALJ's findings.  The ALJ specifically found that Plaintiff has moderate restrictions in activities of daily living and moderate difficulties in social functioning.  Tr. 40.  But this is all speculation.

The ALJ simply made the Listing 12.05 finding based on the earlier mental retardation determination, stating that the "absence of educational material in the record," makes "establishing mental retardation" impossible. *Id*. Again, the question of mental retardation versus whether Plaintiff met the listing is different.

The court is unable to fully review the ALJ's determination here, as it appears the ALJ failed to apply the proper criteria in evaluating whether Plaintiff met the requirements of listing 12.05. The court finds that remand is necessary where, in this case, Plaintiff appears to have met the criteria for the Listing. Accordingly, the court finds remand is appropriate for the ALJ to make a proper determination as to whether Plaintiff met Listing 12.05.

## VI.   CONCLUSION

The court has carefully and independently reviewed the record and concludes that, for the reasons given above, the decision of the Commissioner is REVERSED and this case REMANDED for proceedings consistent with this opinion

A separate judgment will issue.

Done this 6th day of March 2014.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE